UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANESSA JORDAN-ROWELL,<br><br>      *Plaintiff*,<br><br>  -against-<br><br>United States of America,<br><br>      *Defendant*. | 1:23-cv-2155 (ALC)<br><br>OPINON & ORDER |

**ANDREW L. CARTER, JR., United States District Judge:**

In this action, *pro se* Plaintiff Janessa Jordan-Rowell ("Plaintiff") seeks a refund of income taxes that she claims her employers withheld from her wages and deposited with the Internal Revenue Service ("IRS"). Now before the Court is Defendant, the United States of America's (the "Government"), combined Motion to Dismiss certain claims against it for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and Motion for summary judgment pursuant to Fed. R. Civ. P. 56 (the "Motion"). Dkt. No. 91. For the reasons set forth below, Defendant's Motion is **GRANTED**.

## BACKGROUND

The following summary consists of only undisputed material facts ("UMF") unless otherwise indicated. These facts are taken, in large part, from Defendant's Rule 56.1 Statement. Dkt. No. 93. Where the facts are subject to legitimate dispute, they are construed in favor of the non-moving party.[1] *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993).

---

[1] References to Defendant's Rule 56.1 statement are presumed to incorporate all documents and deposition testimony cited therein. Plaintiff did not file any objections to Defendant's 56.1 statement. However, given Plaintiff's *pro se* status, the Court considers and resolves any factual disputes between the parties from Plaintiff's pleadings. Unless otherwise indicated, a standalone citation to a 56.1 Statement represents that this Court has overruled any objections and deemed the underlying factual allegation undisputed.

1

### I.  Procedural Background

On Mach 13, 2024, Plaintiff Janessa Jordan-Rowell ("Plaintiff"), proceeding pro se, imitated this action against the Internal Revenue Service ("IRS") (Dkt. No. 1) and, on March 29, 2023, she filed an Amended Complaint (Dkt. No. 5). In the Amended Complaint, Plaintiff asserted claims against the IRS under 26 U.S.C. §§ 7422 and 7433.[2] The proper defendant for claims arising under 26 U.S.C. §§ 7422 and 7433 is the United States of America. Therefore, by Order dated May 4, 2023, The Court dismissed the claims against the IRS, and in light of Plaintiff's *pro se* status, construed the Amended Complaint as asserting claims against the United States of America. Dkt. No. 12 at 1. The Court thus directed the the Clerk of Court to amend the caption of this action to replace the IRS with the United States of America. *Id*. The Government appeared to defend this suit and answered the Amended Complaint. Dkt. No. 33.

Discovery in this matter closed on March 29, 2024. Dkt. No. 52. On July 24, 2024, the Government moved for summary judgement. Dkt. No. 62. In response, Plaintiff moved for leave to file a second amended complaint. Dkt. Nos. 79–80. The Court, in consideration of Plaintiff's *pro se* status, granted Plaintiff leave to file the Second Amended Complaint and dismissed Defendant's motion for summary judgment without prejudice. After Plaintiff filed the Second Amended Complaint, Defendant again sought leave to file a combined motion to dismiss and motion for summary judgment. The Court granted Defendant's request.

On June 3, 2025, Defendant filed its Motion. Dkt. No. 91. On January 24, 2026, Plaintiff filed her Opposition to Defendant's Motion. Dkt. Nos. 102–103. Defendant did not file a reply.

---

[2] Plaintiff's pleadings are convoluted and difficult to understand. However, as discussed in greater detail below, given her *pro se* status, the Court is required to construe the pleadings liberally and interpret them to raise the strongest arguments that they suggest. *See Infra* I. Applying that here, the Court construes Plaintiff as asserting claims against the IRS under 26 U.S.C. §§ 7422 and 7433 and analyzes Plaintiff's claims accordingly.

The Court considers the Motion fully briefed.

## I.        Factual Background

Through the Second Amended Complaint, Plaintiff seeks refunds of purported income tax overpayments totaling over $6 million for all tax years from 2019 to 2024. Dkt. No. 93 ¶¶ 1–16. Plaintiff claims that for each of these years, the amount of tax withholdings from her paychecks exceeded her actual tax liability. *See generally*, Dkt. No. 79. Plaintiff also seeks damages in the amount of one billion dollars from the IRS for the disallowance of her administrative refund claims. Dkt. No. 79 at 1.

Plaintiff attempts to establish that she overpaid her taxes in each year from 2019 to 2024 by relying primarily on the records of wages and payroll tax withholdings from five companies—1) Apple Shoe Store, 2) Appleness Shoe Store, 3) Black Doll Baby, 4) Bossy Stoats Winery, and 5) Tranquil Perfume (together, the "Companies").[3] However, tax return transcripts submitted by the Government show that Plaintiff did not file a tax return for 2023 or 2024. Dkt. No. 93 at ¶ 16. Accordingly, the only tax years at issue here are 2019, 2020, 2021, and 2022. The Court begins with a general discussion of the Companies, followed by a breakdown of the facts relevant for each of the tax years in dispute.

## I.        Background for the Companies

Plaintiff claim that the tax refund she is entitled to for each of the disputed years stems from withholdings by the Companies that exceeded her tax liabilities. Plaintiff submitted two standard forms in support of her claims, Form W-2 and Form 941. Form W-2 is a tax document

---

[3] For the year 2022, Plaintiff also filed documents showing payroll tax withholdings from CVS Pharmacy and Lulu Press, Inc. Dkt. No. 7 at 4–5.

issued by employers to their employees that summarizes the prior year's compensation and withholdings. Form 941 is a tax document used by employers to report income taxes and payroll taxes withheld from their employees. This form is typically due on the last day of the month following the end of the quarter for which the return is being filed. Dkt. No. 92 at 3 n.1 (citing 26 U.S.C. § 6071; 26 C.F.R.§ 31.6071(a)-1(a)). The following is true of each of the Companies.

Plaintiff appears to own or operate each of the Companies. Dkt. No. 96, Exhibit 50 at 4. The 941 forms submitted by Plaintiff were all signed by her. *See* Dkt. No. 96, Exhibit 67. In addition, the W-2 forms issued by the Companies list addresses that are the same as Plaintiff's residence or that are otherwise associated with Plaintiff. For example, Plaintiff lists the same address as her address in her individual income tax returns for tax years 2019-2022 as the  same address for Apple Shoe Store and Black Doll Baby. Dkt. No. 92 at ¶ 18–20.

Each of the W-2 forms from the Companies that were submitted by Plaintiff report significant wages and tax withholdings. *See, e.g.,* Dkt. No. 7 at 3 (Plaintiff's W-2 from Appleness Shoe Store for 2022 reporting wages in the amount of $5 Million and withholdings in the amount of $6 Million); *see also* Dkt. No. 93 at ¶¶2–18. However, none of the Companies filed corporate income tax returns with the IRS. Dkt. No. 92 at ¶¶ 3, 7, 10, 13. The IRS similarly has no record of any of the Companies filing the statutorily required 941 forms. Dkt. No. 92 at ¶¶ 23–27. Nor has the IRS received deposits for any of the withheld amounts listed on the W-2s submitted by Plaintiff. Dkt. No. 92 ¶¶ 28–32. In fact, as discussed in greater detail below, contrary to Plaintiff's W-2 forms from the Companies, the account transcripts for Plaintiff's tax years from 2019 to 2022 show that Plaintiff is owed no refund. Dkt. No. 92 ¶ 39.

II.    **Tax Year 2019**

Plaintiff claims that three of the Companies issued her W-2s for tax year 2019: Apple Shoe Store, Black Doll Baby, and Boss Stoats Winery. Dkt. No. 92 at ¶ 1.4 The W-2 from Apple Shoe Store reflects that Plaintiff earned $1,147,910 in wages and had $390,786 of taxes withheld. *Id*. The W-2 for Black Doll Baby reflects that Plaintiff earned $1,255,910 in wages and had $430,393.00 of taxes withheld. *Id*. The W-2 for Bossy Stoats Winery reflects that Plaintiff earned $1,651,910 in wages and had $429,496 of taxes withheld. *Id*.

On March 23, 2020, Plaintiff filed her tax return for tax year 2019. Dkt. No. 92 at ¶ 2. Despite having three W-2s that reflect over $3.5 Million in wages earned, Plaintiff reported earning $1,147,910 for the year, and she requested an initial refund of $4,614.5. Dkt. No. 92 at ¶ 3. The IRS initially issued Plaintiff the requested refund of $4,614, after which Plaintiff submitted additional refund claims. *Id*. The IRS denied Plaintiff's subsequent refund claims and later removed all purported tax withholdings for 2019. *Id*. Then, by letter dated March 3, 2023, the IRS notified Plaintiff that her income tax return for 2019 was deemed frivolous. *See* Dkt. No. 1 at 13. Furthermore, Plaintiff's account transcript from the IRS for 2019 shows that the IRS does not owe Plaintiff a refund for that tax year. Dkt. No. 92 at ¶ 39.

### III.      Tax Year 2020

Plaintiff claims that three of the Companies issued her W-2s for tax year 2020: Apple Shoe Store, Black Doll Baby, and Boss Stoats Winery. Dkt. No. 92 at ¶ 5. The W-2 from Apple Shoe Store reflects that Plaintiff earned $1,144,060 in wages and had $389,512 of taxes withheld. *Id*. The W-2 for Black Doll Baby reflects that Plaintiff earned $1,096,060 in wages and had $373,132 of taxes withheld. *Id*. The W-2 for Bossy Stoats Winery reflects that Plaintiff earned $50,000,000 in wages and had $50,000,000 of taxes withheld. *Id*.

5

On March 2, 2021, Plaintiff filed her tax return for tax year 2020. Dkt. No. 92 at ¶ 6. Despite having three W-2s that reflect over $52 Million in wages earned, Plaintiff reported earning $1,411,060 for the year, and she initially requested a refund of $5,508. Dkt. No. 92 at ¶ 7. The IRS initially issued Plaintiff the requested refund of $5,508, after which Plaintiff submitted additional refund claims. *Id*. The IRS denied Plaintiff's subsequent refund claims. Plaintiff's account transcript from the IRS for 2020 shows that the IRS does not owe Plaintiff any additional refund for that tax year. Dkt. No. 92 at ¶ 39.

## IV.        Tax Year 2021

Plaintiff claims that one of the Companies, Appleness Shoe Store, issued her a W-2 for tax year 2021. Dkt. No. 92 at ¶ 8. That W-2 reflects that Plaintiff earned $30,000,000 in wages and had $13,379,221 of taxes withheld. *Id*.

On March 28, 2022, Plaintiff filed her tax return for tax year 2021. Dkt. No. 92 at ¶ 9. On her income tax return, Plaintiff reported earning $30,000,000 for the year, and she requested an initial refund of $2,319,792. *Id*. Plaintiff's refund claim for 2021 was disallowed. Dkt. No. 92 at ¶ 10. The IRS also removed all purported tax withholdings for tax year 2019. Id. Then, by letter dated March 6, 2023, the IRS notified Plaintiff that her income tax return for 2021 was deemed frivolous. See Dkt. No. 1 at 17. Furthermore, Plaintiff's account transcript from the IRS for 2021 shows that the IRS does not owe Plaintiff a refund for that tax year. Dkt. No. 92 at ¶ 39.

## V.        Tax Year 2022

Plaintiff claims that she received W-2s from three entities: two of the Companies (Appleness Shoe Store and Tranquil Perfume) and CVS Pharmacy, Inc. Dkt. No. 92 at ¶ 12. The W-2 from Appleness Shoe Store reflects that Plaintiff earned $6,000,000 in wages and had $6,000,000 of taxes withheld. *Id*. The W-2 for Tranquil Perfume reflects that Plaintiff earned

$150,000,000 in wages and had $150,000,000 of taxes withheld. *Id*. The W-2 for CVS

Pharmacy, Inc. reflects that Plaintiff earned $19,408 in wages and had $1,434 of taxes withheld.

*Id*.

On April 10, 2023, Plaintiff filed her tax return for tax year 2022. Dkt. No. 92 at ¶ 13.

Despite having three W-2s that reflect over $156 Million in wages earned, Plaintiff reported

earning $6,019,409 for the year, and she initially requested a refund of $3,817,038. Dkt. No. 92

at ¶ 13. The IRS removed all purported tax withholdings for Plaintiff for tax year 2022. Dkt. No.

92 at ¶ 15. Furthermore, Plaintiff's account transcript from the IRS for 2022 shows that the IRS

does not owe Plaintiff a refund for that tax year. Dkt. No. 92 at ¶ 39.

**LEGAL STANDARD**

**I.        Standard for a Motion for Summary Judgment In General**

Summary judgment is appropriate where "there is no genuine issue as to any material fact

and "the moving party is entitled to a judgment as a matter of law." *Cortes v. MTA New York

City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting A*nderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247–48 (1986)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a).

Material facts are facts that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. An

issue of fact is "genuine" when a reasonable fact finder can render a verdict in the nonmoving

party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

("Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no genuine issue for trial.") (internal quotation marks omitted). "[T]he

court's responsibility is not to resolve disputed issues of fact but to assess whether there are any

factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against

the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Marvel Characters v. Simon*, 310 F.3d 280, 285–86 (2d Cir. 2002)). If the moving party meets its burden, the burden shifts to the non-moving party to bring forward "specific facts showing a genuine issue for trial." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016) (citation omitted); *see also* Fed. R. Civ. P. 56(c). The non-moving party "may not rest upon mere allegation[s] or denials of his pleadings," *Anderson*, 477 U.S. at 259. Rather, the non-moving party must "designate specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and these facts must be "admissible in evidence." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (quoting Fed. R. Civ. P. 56(e)). "The mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment," *Anderson*, 477 U.S. at 247 (emphasis in original), and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 50 (internal citations omitted).

Where, as here, a *pro se* litigant is defending against a motion for summary judgment, the court must give the plaintiff "special solicitude." *Shuanglong Shi v. Delta Realty Grp., LLC*, 2025 U.S. Dist. LEXIS 135860, at *5 (S.D.N.Y. July 16, 2025) (internal quotation marks and citation omitted). "As a result, a *pro se* party's opposition to a motion for summary judgment must be read liberally and interpreted to raise the strongest arguments that they suggest." *Id*. However, "application of this different standard does not relieve [a] plaintiff of [their] duty to meet the requirements necessary to defeat a motion for summary judgment." *Id*. (alteration original). Therefore, the "duty to liberally construe a plaintiff's opposition is not the equivalent of a duty to re-write it." *Id*.

## II.        Standard for a Motion for Summary Judgment In a Tax Action

A plaintiff in a tax refund lawsuit bears the burden of showing that "the United States has money which belongs to [them]." *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932) (cleaned up). It is well established that IRS tax calculations "are presumptively valid and create a prima facie case of liability, such that the Government is 'entitled to have the assessment reduced to judgment unless the taxpayer overcomes the presumption by the IRS that the assessment is correct.'" *United States v. Chrein*, 368 F. Supp. 2d 278, 282 (S.D.N.Y. 2005) (citation omitted), *aff'd*, 274 F. App'x 56 (2d Cir. 2008); *see also Silipigno v. United States, 749 F. App'x 59, 61 (2d Cir. 2019)* . IRS tax transcripts are sufficient to establish a taxpayer's liability in the first instance. *See In re Kossoff PLLC, 2026 LX 34915, at \*14 (S.D.N.Y. Jan. 5, 2026) quoting United States v. Wales*, No. 14-cv-864, 2017 WL 2954683, at \*5 (S.D.N.Y. July 11, 2017) ("Courts in this circuit routinely consider IRS tax transcripts as competent evidence of tax liability. In fact, 'it is well established that ... a computer printout of a taxpayer's transcript of account, absent a showing of irregularity, provides sufficient verification of the taxpayer's outstanding liability.") (internal quotation marks omitted); *United States v. Bettan*, 15-cv-5204, 2020 U.S. Dist LEXIS 73899, at \*11 (E.D.N.Y. 2020) (same); *United States v. Martynuk*, 13 CV 4110, 2015 WL 328100, at \*5 (S.D.N.Y. 2015) ("[I]t is well established that a Form 4340 or a computer printout of a taxpayer's transcript of account, absent a showing of irregularity, provides sufficient verification of the taxpayer's outstanding liability[.]").

To rebut this presumption, "[a] claim for a refund must be substantiated by something other than tax returns, uncorroborated oral testimony, or self-serving statements." *Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir. 1985) (vacated on other grounds *United States v. Bond*, 762 F.3d 255 (2d Cir. 2014)). This is because "standing by itself, the return is merely self-

serving hearsay if offered on behalf of the taxpayer or an admission if offered against [it]." *Id.* (internal quotation marks and citations omitted); *see also Hoopengarner v. Comm'r*, 86 T.C.M. (CCH) 723, T.C. Memo 2003-343, 2003 WL 22962501, at *4 (T.C. 2003) ("A tax return is merely a statement of the taxpayer's claim and does not establish the truth of the matters set forth therein."). However, tax returns may be accepted as *prima facie* evidence of a taxpayer's taxable income where they are supported "by an evidentiary foundation laid through a competent witness," such as an accountant or tax professional. *Id.* (internal quotation marks and citations omitted). Absent the existence of tax returns supported by such foundation, the plaintiff must point to "specific evidence that demonstrates the proper amount of [their] tax liability," *O'Callaghan v. United States*, 943 F. Supp. 320, 327 (S.D.N.Y. 1996) (internal quotation marks omitted). The type of "specific evidence" necessary to rebut the presumption typically fall outside of tax forms and include documents such as employment contracts, receipts, and credit card statements. *See Barnes Grp., Inc. v. United States*, 872 F.2d 528 (2d Cir. 1989) (vacating the dismissal of appellant's (plaintiff's) claim against the Government for a refund of corporate income taxes where the district court prevented appellant from submitting certain employment contracts that could have supported appellant's claim for a tax refund.); *see also Tilman v. United States,* 644 F. Supp. 2d 391 (S.D.N.Y. 2009) (considering plaintiff's receipts and credit card statements in an action by a *pro se* Plaintiff for a tax refund).

If a plaintiff seeking a tax refund successfully rebuts the presumption with specific evidence, then under 26 U.S.C. § 7491(a), the burden of proof shifts to the Government "with respect to any factual issue related to [the] taxpayer's tax liability [so long as the taxpayer] maintained adequate records, satisfied applicable substantiation requirements, cooperated with [the IRS], and introduced during the court proceeding credible evidence on the factual issues."

*Tilman v. United States*, 644 F .Supp. 2d 391, 398 (S.D.N.Y. 2009) (third alteration original; citation omitted); *see also Estate of Thompson v. Comm'r*, 499 F.3d 129, 133 (2d Cir. 2007). If these requirements are not satisfied, the burden remains on the taxpayer. *See Tilman*, 644 F.Supp. 2d at 398.

### III.        Standard for a Motion To Dismiss under Fed. R. Civ. P. 12(b)(1)

In this Circuit, a case is "'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). Where jurisdictional facts are at issue, "'the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Id*. (citing *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). But "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Id*. (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

*Pro se* litigants faced with motions to dismiss "must be held to less stringent standards than formal pleadings drafted by lawyers." *Ahmed v. GEO USA LLC*, No. 14-cv-7486, 2015 WL 1408895, at *2 (S.D.N.Y., Mar. 7, 2014). Practically speaking, "[c]ourts read the pleadings, briefs, and opposition papers of *pro se* litigants liberally and interpret them to raise the strongest

arguments that they suggest." *Carter v. Ponte*, No. 17-CV-1830 (VSB), 2018 WL 4680995 at *4 (S.D.N.Y. Sept. 28, 2018) (collecting cases). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citations omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that a *pro se* complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.2010) (citation and internal quotation marks omitted).

## DISCUSSION

### I.    Defendant's Motion For Summary Judgment

The Government seeks summary judgment on Plaintiff's claim that she is entitled to a refund for tax years 2019–2022 under 26 U.S.C. § 7422. The Government contends that it is entitled to summary judgment on this claim because the IRS did not withhold any taxes on Plaintiff's behalf and thus does not owe her a refund. Dkt. No. 92 at 16. In support of this claim, the Government submitted tax transcripts for each tax year from 2019-2022. Each of the transcripts indeed show that the IRS did not receive any withholdings from the Companies. The transcripts are presumptively valid; therefore, they create a rebuttable presumption that the IRS does not owe Plaintiff a refund. *See United States v. Wales*, No. 14-cv-864, 2017 WL 2954683, at *5 (S.D.N.Y. July 11, 2017); *United States v. Bettan*, 15-cv-5204, 2020 U.S. Dist LEXIS 73899, at *11 (E.D.N.Y. 2020); *United States v. Martynuk*, 13 CV 4110, 2015 WL 328100, at *5 (S.D.N.Y. 2015). The burden thus shifts to Plaintiff to produce evidence showing that the IRS did, in fact, owe her a refund. *In re PT-1 Communs., Inc.*, at 124 (Bankr. E.D.N.Y. 2011). Plaintiff has failed to do so.

Plaintiff attempts to support her claim for a tax refund by pointing to her W-2s, 941s, tax returns (together, the "Tax Documents"), and a "Business Statement" from "Small Business Bank," that purports to shows an account for Appleness Shoe Store. These documents, alone, cannot support Plaintiff's claim for a tax refund as a matter of law.

For the Tax Documents to provide *prima facie* evidence of Plaintiff's claim for a refund, they would need to be supported by a foundation laid by a competent witness, such as an accountant or tax professional. No such foundation has been laid in this suit. Worse, the Tax Documents lack any indicia of credibility here, where they were largely created, signed, and filed by Plaintiff. There could be no greater example of self-serving hearsay offered by a taxpayer.

The Business Statement filed by Plaintiff does not alter the Court's conclusion for two reasons: (1) it is conclusory and self serving and (2) it fails to show a deposit of any taxes with the IRS. With respect to the first point, the Court is skeptical of the legitimacy of the Business Statement. The Business Statement (pictured in-part below at Figure 1.0) allegedly lists transactions from December 1, 2021 to December 31, 2021. The statement does not come from a bank or any other financial institution, nor does it even reference one, other than generally stating something about "Small Business bank." It purports to summarize Plaintiff's account transactions for that time period as having a beginning balance of $30,000,000, deposits of $30,000,000, withdrawals of $30,000,000, and an ending balance of $30,000,000—the same balance it started with. The statement lists one ACH transaction on December 17, 2021, but it does not show whether the transaction was a credit or debit, it does not show who the transaction was to or from, and it does not show any other transactions for that time period even though the account summary indicates that both deposits and withdrawals occurred.

Figure 1.0

BUSINESS STATEMENT

APPLENESS SHOE STORE LLC
p.o box 814
NEW YORK, NY 10150

| SUMMARY for Business Account #54199368 | 12/1/2021 thru 12/31/2021 |
| --- | --- |
| Beginning balance | $30,000.000 |
| Withdrawals | $30,000,000 |
| Deposits | $30,000,000 |
| Ending Balance | $30,000.000 |

TRANSACTIONS

| Date | Description | Amount |
| --- | --- | --- |
| 12-17 | ACH | $30,000,000.00 |

Furthermore, the Business Statement does not show that any portion of the $30,000,000

was deposited with the IRS. This failure is fatal to Plaintiff's claim. For these reasons, Plaintiff

has failed to meet her burden of demonstrating that she is entitled to a refund. Therefore, the

Motion is **GRANTED** with respect to Defendant's request for summary judgement on Plaintiff's

claim for a tax refund for tax years 2019–2022.

## II.        Defendant's Motion to Dismiss Under Rule 12(b)(1)

The Government seeks dismissal of Plaintiff's claim for a tax refund for tax years 2023–

2024, and Plaintiff's claim for $1 billion in damages (which stems from the IRS's denial of her

tax refund). The Court addresses each in turn below.

### a.   Plaintiff's Claim for a Tax Refund for 2023 and 2024 are Barred by the Doctrine of Sovereign Immunity

Plaintiff has sued the Government for a tax refund for tax years 2023 and 2024 under 26

U.S.C. § 7422. In general, "[a] court lacks jurisdiction to entertain an action brought against the

United States absent an express statutory waiver of sovereign immunity." *United States v. Bond*,

762 F.3d 255, 259 (2d Cir. 2014). Section 7422 provides the necessary waiver, but only where a

plaintiff has filed "a claim for refund or credit [. . .] with the Secretary, according to the

provisions of law in that regard, and the regulations of the Secretary established in pursuance

14

thereof." 26 U.S.C. § 7422(a). IRS regulations further require that "[a] plaintiff suing in federal court for a tax refund [. . . ] establish that [they have] filed a proper and timely administrative claim with the IRS, received a final notice of denial from the IRS or failed to receive a decision on the claim within six months of its filing, and brought suit in federal court within two years of receiving notice from the IRS that it denied the refund." *Gray v. United States*, No. 24-cv-262, 2025 LX 104629 at *19-21 (S.D.N.Y. May 28, 2025) (cleaned up). Moreover, the refund claim must "set[ ] forth in detail the ground for the refund and facts sufficient to apprise the IRS of the basis for the refund." *Id*. (alteration original; internal quotation marks and citations omitted). IRS regulations impose several administrative requirements, the exhaustion of which is a prerequisite to the Government's waiver of sovereign immunity, and by extension, the ability for a plaintiff to sue the Government in federal court. *Id*. The administrative exhaustion requirement is thus jurisdictional. *Id*.

Here, the Government contends that Plaintiff has failed to allege that she has satisfied any of the administrative requirements outlined above. Dkt. No. 92 at 16. In support of their position, the Government points to the tax transcripts which show that Plaintiff has not filed tax returns for 2023 or 2024. [4] *Id*. The Court finds no admissible evidence to the contrary. Plaintiff thus fails to meet administrative requirements set forth under the statute. Accordingly, Plaintiff's claims for a tax refund for tax years 2023 and 2024 are dismissed for lack of subject matter jurisdiction.

---

[4] The tax transcripts were raised in the declaration of Bryan M. Huang. The Court may properly consider the tax transcripts on a motion to dismiss, even though those documents lie outside the pleadings. *See Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citing *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)) (holding that where jurisdictional facts are at issue, "'the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'")

b.  Plaintiff's Claim for $1 Billion is Barred by the Doctrine of Sovereign Immunity

In addition to her tax refunds, Plaintiff seeks $1 billion in damages from the IRS for its denial of her tax refund claim under 26 U.S.C. § 7433. This claim, too, is barred by the doctrine of sovereign immunity. There are two potential waivers that *could* apply to the Government's immunity for this claim: the Federal Tort Claims Act ("FTCA") for tort actions under 28 U.S.C. §§ 1346(b) and 2672; and a provision of the Internal Revenue Code ("IRC") authorizing wrongful collection actions against the IRS under 26 U.S.C. § 7433(a). Neither waiver applies.

i.  Waiver Does Not Apply Under The FTCA.

As a threshold matter, the FTCA expressly does not apply to "[a]ny claim arising in respect of the assessment or collection of any tax." 28 U.S.C. § 2680(c). *See Gray v. United States*, 2025 U.S. Dist. LEXIS 101432, at *12 (S.D.N.Y. May 28, 2025) (collecting cases). The Second Circuit, which is binding on this Court, has interpreted the statute to "to include tax refunds and other mechanisms for assessing and collecting taxes." *Perry v. Wright*, 12-cv-721, 2013 WL 950921, at *5 (S.D.N.Y. Mar. 8, 2013) (*citing Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475, 478 (2d Cir. 1995)). Here, Plaintiff's claim for damages is based on the denial of her tax refund, which falls clearly within the statute's prohibition. Therefore, this Court lacks jurisdiction to hear Plaintiff's claim under the FTCA.

Even if this were not the case, the FTCA imposes similar administrative exhaustion requirements. Specifically, § 28 U.S.C. § 2401(b) sates that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." The administrative exhaustion requirement "is jurisdictional

16

and cannot be waived." *Gray v. United States*, 2025 U.S. Dist. LEXIS 101432, at *14 (S.D.N.Y. May 28, 2025) (internal quotation marks and citation omitted). Even construing Plaintiff's pleadings liberally, there are no allegations that Plaintiff filed an administrative claim with the IRS for the $1 billion in damages she now seeks in this action. Plaintiff has thus failed to demonstrate that she exhausted her administrative remedies under the FTCA. Plaintiff's failure means that the Government maintains its sovereign immunity; as a result, the Court lacks subject matter jurisdiction and the claim is **DISMISSED**.

ii.   Waiver Does Not Apply Under 26 U.S.C. § 7433(a)

The Court reaches the same result with respect to Plaintiff's claim for $1 billion in damages under the IRC. A district court lacks jurisdiction to hear a claim brought pursuant to 26 U.S.C. § 7433 in the first instance because the statute specifies that a taxpayer's "exclusive remedy" under § 7433(e)(1) lies in the bankruptcy court. *Gray v. United States*, 2025 U.S. Dist. LEXIS 101432, at *16 (S.D.N.Y. May 28, 2025). This action does not arise from an appeal from the bankruptcy court; the Court need not conduct any further inquiries to dismiss this claim.

Even if the Court were to look beyond that requirement in the statute and reach the merits of Plaintiff's claim, the result would be the same because the statute similarly imposes administrative exhaustion requirements, and for the reasons outlined above, Plaintiff has not alleged that she exhausted her administrative remedies. Plaintiff has thus failed to demonstrate that waiver applies under Section 7433. Therefore, the Court lacks subject matter jurisdiction, so the damages claim is **DISMISSED**.[5]

---

[5] Even if the Court had subject matter jurisdiction over Plaintiff's claims, dismissal would still be appropriate here because, as explained above, the tax transcripts show that the Government does not owe Plaintiff a refund.

## CONCLUSION

For the reasons outlined above, the Motion is **GRANTED.** Discovery has concluded in this matter and the Court has provided Plaintiff two opportunities to amend. Plaintiff cannot cure the defects outlined above even if the Court granted her leave to amend at this late stage of the proceedings. Accordingly, this case is **DISMISSED** with prejudice. The Clerk of Court is respectfully directed to terminate the pending motions at Dkt. No. 91 and close this case.

**SO ORDERED.**

**Dated:** **March 31, 2026**
      **New York, New York**

            **ANDREW L. CARTER, JR.**
            **United States District Judge**